IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. FAZIO, | ) | CASE NO. 1:17 CV 842 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the

Commissioner of Social Security denying the applications of the plaintiff, Michael J. Fazio,

for disability insurance benefits and supplemental security income.  The Commissioner has

answered[2] and filed the transcript of the administrative record.[3]  Under my initial[4] and

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated
April 19, 2017.

[2] ECF # 11.

[3] ECF # 12.

[4] ECF # 6.

procedural[5] orders, the parties have briefed their positions[6] and filed supplemental charts[7] and the fact sheet.[8]  They have participated in a telephonic oral argument.[9]

## Facts

### A.    Background facts and decision of the Administrative Law Judge ("ALJ")

Fazio, who was 48 years old at the time of the administrative hearing,[10] graduated high school and completed a five year apprenticeship with the plumbers union.[11]  His past relevant employment history includes work as a general hardware salesperson and plumber.[12]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Fazio had severe impairments consisting of scoliosis; lumbar degenerative disc disease; nasal septum perforation; and fistula of the soft palate (20 CFR

---

[5] ECF # 13.

[6] ECF # 18 (Commissioner's brief); ECF # 15 (Fazio's brief): ECF # 19 (Fazio's reply brief).

[7] ECF # 18, Attachment 1 (Commissioner's charts); ECF # 15, Attachment 1 (Fazio's charts).

[8] ECF # 14 (Fazio's fact sheet).

[9] ECF # 22.

[10] ECF # 14.

[11] ECF #12, Transcript ("Tr.") at 37.

[12] *Id*. at 23.

404.1520(c) and 416.920(c)).[13] The ALJ made the following finding regarding Fazio's residual functional capacity:

> After careful consideration of the entire record, I find that Mr. Fazio has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can frequently balance and kneel. He can occasionally stoop, crouch, and climb ramps and stairs. He can never crawl or climb ladders, ropes or scaffolds. He can never work in an environment with extreme cold, extreme heat, concentrated humidity, or concentrated pulmonary irritants.[14]

The ALJ decided that this residual functional capacity precluded Fazio from performing his past relevant work.[15]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed nationally that Fazio could perform.[16] The ALJ, therefore, found Fazio not under a disability.[17]

**B.    Issues on judicial review**

Fazio asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Fazio presents the following issues for judicial review:

---

[13] *Id.* at 14.

[14] *Id.* at 18.

[15] *Id.* at 23.

[16] *Id.*

[17] *Id.* at 24.

- Whether the ALJ's determination that Fazio's scoliosis and lumbar degenerative disc disease did not meet the requirements of Listing 14.09 is supported by substantial evidence.

- Whether the ALJ's handling of treating physician Sandra Dellaportas, M.D.'s medical opinion complied with the requirements of the treating physician rule.[18]

The Court recommends that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded for further administrative proceedings.

## Analysis

### A.  Applicable legal principles

#### 1.  *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions.  However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different

---

[18] ECF # 15 at 3.

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.     *The treating source rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] 20 C.F.R. § 404.1527(d)(2). The Court notes that the regulatory provisions governing disability insurance benefits and supplemental security income are substantially similar; therefore, the Court may cite to one or both of these programs interchangeably within

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "'well-supported by medically acceptable clinical and laboratory diagnostic techniques'" to receive such weight.[28] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

---

this report and recommendation.

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31]  The court noted that the regulation expressly contains a "good reasons" requirement.[32]  The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34]  It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35]  The former confers a substantial, procedural right on

---

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.* (citing and quoting 20 C.F.R. § 404.1527(d)(2)).

[33] *Id.* at 546.

[34] *Id.*

[35] *Id.*

the party invoking it that cannot be set aside for harmless error.[36]  It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather, it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43]  The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[36] *Id.*

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 376.

[40] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[43] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[44]  These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).  Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[45]  The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference . . . ."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47]  The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48]  Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

-10-

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given to the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source;[59]

- the rejection or discounting of the weight of a treating source without assigning weight;[60]

---

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[59] *Blakley*, 581 F.3d at 407-08.

[60] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining);[61]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source;[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor;[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

---

[61] *Id.* at 407-08.

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F. App'x at 551-52.

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

[67] *Id.* at 410.

-12-

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

**B**.    **Application of Standards**

*1.    Listing 14.09C*

Fazio argues that the regulations direct the ALJ to consider Listing 14.09 when a claimant suffers from an abnormal curvature of the spine.[70]  In support, Fazio points to the preface to Section 1.00 of the Listings:

> L. Abnormal curvatures of the spine. Abnormal curvatures of the spine (specifically, scoliosis, kyphosis and kyphoscoliosis) can result in impaired ambulation, but may also adversely affect functioning in body systems other than the musculoskeletal system. For example, an individual's ability to breathe may be affected; there may be cardiac difficulties (e.g., impaired myocardial function); or there may be disfigurement resulting in withdrawal or isolation. When there is impaired ambulation, evaluation of equivalence may be made by reference to 14.09A. When the abnormal curvature of the spine results in symptoms related to fixation of the dorsolumbar or cervical spine, evaluation of equivalence may be made by reference to 14.09C. When there is respiratory or cardiac involvement or an associated mental disorder, evaluation may be made under 3.00ff, 4.00ff, or 12.00ff, as appropriate. Other consequences

---

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[69] *Id.* at 940.

[70] ECF #15 at 5.

should be evaluated according to the listing for the affected body system.[71]

Listing 14.09C contains the following criteria:

> **14.09 Inflammatory arthritis**. As described in 14.00D6. With: …
>
> C. Ankylosing spondylitis or other spondyloarthropathies, with:
>
> 1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or
>
> 2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.[72]

Fazio bears the burden of proving that he meets or equals a listing.[73]  Sixth Circuit precedent allows for remand regarding whether a claimant meets a listing only where the record raises a "substantial question" as to this issue.[74]

---

[71]  20 CFR Pt. 404, Subpt. P, App. 1, 1.00L.

[72]  20 CFR Pt. 404, Subpt. P, App. 1, 14.09C.

[73]  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

[74]  *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 639, 641-42 (6th Cir. 2013) (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir.1990)).

Neither the State agency medical consultants[75] nor the ALJ[76] identified Listing 14.09C in their review of Fazio's case.  In fact, the ALJ's Step Three determination does not even include standard boilerplate that he considered all of the listings, including those specifically enumerated in his analysis.[77]  The only listing related to Fazio's back impairments considered by the ALJ was listing 1.04 (Disorders of the Spine).[78]  But, as the Commissioner concedes,[79] the record here showed abnormal curvature of the spine.

The parties disagree as to the meaning of "ankylosis" (fixation) in listing 14.09C. Fazio submits that this refers to a flexion up to the degrees specified.[80]  The Commissioner responds that ankylosis must be a permanent fusion or fixation of the spine at the degrees specified.[81]  Fazio points to the fixation and range of motion findings of Adi Gerblich, M.D., as well as the January 14, 2016, note by Sandra Dellaportas, M.D., that he could not bend his spine and the resulting severe functional limitations in support of his argument that the evidence in the record raises a "substantial question" as to

---

[75] Tr. at 96, 123-26, 136.

[76] *Id.* at 17-18.

[77] *Id.*

[78] *Id.*

[79] ECF # 18 at 19.

[80] ECF # 15 at 6.

[81] ECF # 18 at 17-19.

whether he meets or equals listing 14.09C.[82]  The Commissioner asserts that the range of
motion testing did not show fixation of Fazio's spine in a forward position, and therefore
Listing 14.09C was not met.

The Commissioner advanced a similar argument in *Ayers v. Astrue,*[83] which the
court ultimately rejected:

> In response to Plaintiff's assertion of error, Defendant argues
> only that Plaintiff has misinterpreted Dr. Schapera's range of
> motion testing as satisfying the minimal '30 degrees of flexion'
> required for Listing 14.09C2. Defendant contends that Dr.
> Schapera did not test the fixation of Plaintiff's cervical spine,
> but instead measured Plaintiff's ability to *move* his neck.
> However, the Defendant offers no authoritative support or
> medical explanation to support its hypothesis. Therefore, the
> most this Court can conclude is that Dr. Schapera's ROM testing
> may satisfy the '30 degrees of flexion.'[84]

Here, the Commissioner cites *Armstrong v. Commissioner of Social Security*, an
Eleventh Circuit case,[85] in support of the agency's reading of the listing.[86]  But even
*Armstrong* does not support the result the Commissioner wants here – affirmation – as the

---

[82] ECF # 15 at 6.

[83] *Ayers v. Astrue*, No. 1:10-cv-30, 2011 WL 900998, at *5 (S.D. Ohio Feb. 14, 2011),
*report and recommendation adopted by Ayers v. Astrue*, 2011 WL 901790 (S.D. Ohio Mar.
14, 2011).

[84] *Ayers*, 2011 WL 900998, at *5 (emphasis in original).

[85] *Armstrong v. Comm. of Soc. Sec.*, 546 F. App'x 891 (11th Cir. 2013) ("To
determine whether Armstrong met the requirements of Listing 14.09C, it appears the ALJ
would have needed to ascertain the angle of ankylosis or fixation of his spine, as shown by
appropriate medically acceptable imaging.").

[86] ECF # 18 at 18.

Eleventh Circuit ultimately remanded.[87]  First, it was "unclear whether the ALJ even considered the requirements of Listing 14.09C at step three" of the analysis; the ALJ did not discuss specifically listing 14.09C, even though she found the claimant's ankylosing spondylitis ("AS") to be a severe impairment (to which listing 14.09C applies), and she did not explain what evidence showed the claimant did not meet the listing.[88]  In addition, the ALJ gave no indication she had considered to what degree, if any, the claimant's spine was fixed at an angle.[89]  Finally, the ALJ denied the claimant's request for a medical opinion regarding whether Listing 14.09 was met, even though the record contained x-rays and a CT.[90]

Similarly, in this case, the ALJ did not discuss Listing 14.09C or the evidence that showed Fazio did not meet the listing.  As a result, the specific medical evidence and reasoning advanced in the Commissioner's brief amounts to impermissible *post hoc* rationalization.[91]

---

[87] *Id.* at 896.

[88] *Id.* at 895.

[89] *Id.*

[90] *Id.*

[91] *Taltoan v. Colvin*, No. 4:13CV2526, 2014 WL 5795561, at *12 (N.D. Ohio Nov. 6, 2014) ("Unfortunately, the ALJ included no such analysis in the decision and the Court cannot engage in *post hoc* rationalizations.") (citing *S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947)).

As substantial evidence does not support the ALJ's Step Three determination, I recommend the Court reverse the ALJ's finding of no disability and remand for further administrative proceedings.

**2.      *Treating Source***

Dr. Dellaportas, Fazio's primary care physician, completed a Medical Source Assessment (Mental) in January 2016, opining that Fazio experienced severe functional limitations resulting from major depressive disorder.[92]  The ALJ discussed Dr. Dellaportas's mental capacity opinion at Step Four but did not assign it any specific weight.

The ALJ first conflated the Step Two and Step Three analyses in evaluating Fazio's mental impairments.  The ALJ found Fazio's major depression and generalized anxiety disorder nonsevere.[93]  But the ALJ then discussed Fazio's mental impairments in terms of Step Three listing requirements, and improperly used that analysis to reemphasize his conclusion that Fazio's mental impairments were nonsevere: "Because Mr. Fazio's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(l) and 416.920a(d)(l))."[94]  Furthermore, any evaluation of Fazio's major

---

[92] Tr. at 464-67.

[93] *Id.* at 16.

[94] *Id.*

depression and generalized anxiety disorder using Step Three criteria would only be necessary if such impairments were found severe at Step Two.

The ALJ then compounded this error by improperly conflating the two distinct treating source opinion analyses set forth by the Sixth Circuit at Step Four.  The ALJ's analysis of Dr. Dellaportas's mental medical source opinion consisted of the following paragraph:

> However, this assessment is not supported by Dr. Dellaportas [sic] treating notes. There is evidence in the record of some noncompliance with psychotropic medication (Ex. IF, p. 34). At a visit in December 2015 Mr. Fazio reported that his health insurance would not cover mental health treatment. He was stressed over multiple issues. He was diagnosed with major depressive disorder, single episode, and moderate (primary encounter diagnosis), and generalized anxiety disorder. He was prescribed Remeron (Ex. SF, p. 4).[95]

The only fault with Dr. Dellaportas's opinion itself identified by the ALJ is a boilerplate blanket statement that the mental medical source opinion was not supported by Dr. Dellaportas's treating notes.  This fails to satisfy the "good reasons" requirement.[96] And any inconsistency between Dr. Dellaportas's opinion and treating notes properly is applied only after the ALJ has determined that the opinion will not be given controlling weight,[97] which did not happen here.  Nor does the ALJ explain how, if at all, Fazio's noncompliance with medication is relevant to the treating source analysis.

---

[95] *Id.* at 21.

[96] *Gayheart*, 710 F.3d at 376.

[97] *Id.*

The Commissioner attempts to rehabilitate the shortcomings of the ALJ's treating source analysis by asserting that it is "sufficiently clear" from the ALJ's opinion that the ALJ "discounted" Dr. Dellaportas's opinion to some degree.  Because the ALJ discounted Dr. Dellaportas's opinion without assigning weight, the ALJ violated the *Wilson* rules.[98]

On remand, the ALJ should properly analyze Fazio's mental impairments at Step Two.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Fazio had no disability. Accordingly, I recommend that the decision of the Commissioner denying Fazio's disability insurance benefits and supplemental security income be reversed and remanded for further administrative proceedings consistent with this Recommendation.

Dated: June 14, 2018                         s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

---

[98] *Blakley*, 581 F.3d at 408.

-20-

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[99]

---

[99] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).